UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUTUMNWOOD GROVE
CONDOMINIUM ASSOCIATION, INC.

    Plaintiff,

v.

CASE NO.: 8:18cv 2264 T17SPF

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, AUTUMNWOOD GROVE CONDOMINIUM ASSOCIATION INC., (hereinafter "Plaintiff" or "Autumnwood Grove"), by and through its undersigned counsel, and hereby submits this its Complaint against Defendant, PHILADELPHIA INDEMNITY INSURANCE COMPANY (hereinafter "Defendant" or "Philadelphia"), and in support of its Complaint, alleges and avers as follows:

**I.    JURISDICTION AND VENUE**

1. At all times material hereto, Plaintiff was and is a Condominium Association incorporated in the State of Florida with its principal place of business located Lakeland, Florida.

2. Defendant, Philadelphia, is an insurance company incorporated under the law of a state other than the State of Florida with its principal place of business of Pennsylvania.

3. The amount in controversy, without interest and costs exceeds the sum or value specified by 28 U.S.C. §1332.



4. Defendant, Philadelphia executed and delivered to Plaintiff a commercial policy of insurance, Policy Number PHPK986725, effective from February 27, 2013 to February 27, 2014. A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

5. On or about September 20, 2013 Plaintiff suffered a direct physical loss to its insured property in the form of cracking to the interior and exterior of the insured buildings potentially the result of a sinkhole loss.

6. Plaintiff timely reported the damages to Defendant and at all times cooperated with Defendant and its representatives in their investigation of the loss.

7. Despite evidence of a covered loss, discussed further *infra*, Defendant has failed to pay the requisite benefits due and owing under the policy, resulting in a breach of the insurance contract.

8. Therefore, jurisdiction for this cause of action remains proper in this Court.

## II.   BREACH OF CONTRACT

9. Paragraphs 1-8 are hereby incorporated into this section by reference.

10. Although a Pennsylvania corporation, while engaging in the business of insurance in the state of Florida, Defendant is required to follow and/or comply with all Florida Insurance Code statues and regulations promulgated by the legislature and Florida Department of Financial Services.

11. Plaintiff is the duly organized condominium association for the development known as Autumnwood Grove Condominium Association, Inc. located at 4063 Shade Tree Lane; Lakeland, Florida 33812.

12. The policy of insurance issued by Defendant to Plaintiff is an all-risks policy, which means that all risks are covered unless specifically excluded. Additionally, per the policy,

Defendant is obligated to pay for direct physical loss and damage to the insured property resulting from sinkhole loss.

13. Under the Policy and Florida law, Defendant agreed to adjust all losses with its insured fairly and timely.

14. Plaintiff paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of it under the Policy.

15. Upon noticing a direct physical loss to the property on or about September 20, 2013, Plaintiff timely reported the damage to Defendant.

16. Upon receiving the claim, Philadelphia assigned Claim Number 808616 to the Property loss.

17. Initially, Defendant did not commission an engineer and/or geologist to perform the requisite testing required under Florida law in the event of a potential sinkhole loss.

18. After multiple requests from Plaintiff and its representatives, Defendant did commission a company to perform some destructive testing, but still their investigation fell short compared to what is frequently performed in the event of a potential sinkhole loss.

19. Ultimately, Defendant relied on the insufficient testing performed by their retained geotechnical firm to deny Plaintiff's claim.

20. Concerned with the deficiency of Defendant's investigation and in the face of cracking and settling that was continuing to worsen, Plaintiff opted to go to Neutral Evaluation, an alternative dispute resolution offered through Fla. Stat. §627.7074, where another qualified engineer or geologist inspects the insured premises, reviews the reports, and (if needed to render an opinion) can request additional testing be performed.

21. The findings of the Neutral Evaluator are not binding, however, and the parties retain their access to Courts.

22. Here, the Neutral Evaluator found that additional testing was necessary in order to render his opinion, further underscoring Plaintiff's position that the initial testing performed by Defendant was insufficient.

23. In order to prove that there is a **sinkhole loss** under Florida Law and the Plaintiff's insurance policy, there must be **structural damage** caused at least in part by **sinkhole activity**.

24. After performing interior and exterior inspections of all of the buildings, along with additional sinkhole testing, the Neutral Evaluator found that all of the buildings at Autumnwood Grove except for the pool house had suffered structural damage, the first prong necessary to prove that a sinkhole loss had occurred.

25. Although the Neutral Evaluator did not believe that there was sinkhole activity occurring at the buildings, Plaintiff had all of the Neutral Evaluator's test results reviewed by a local Lakeland-based geotechnical engineer, familiar with the soil make-up in the community.

26. After a thorough review of both the Neutral Evaluator's findings on structural damage along with the Neutral Evaluator's boring logs that reflected his sinkhole testing results, the Plaintiff's Lakeland-based engineer agreed with the Neutral Evaluator that 39 of the buildings had suffered structural damage and found that out of those buildings 36 of the 39 were suffering structural damage as a result of sinkhole activity.

27. The Plaintiff's engineer also performed estimates as to what it would cost to stabilize the land and building and repair the foundation (as is required under Florida law and the policy). In doing so, he found that it would take $6,628,125.00 to properly remediate the below ground sinkhole conditions at the Autumnwood Grove buildings.

28. The above-referenced reports and estimates along with a damages summary were provided to Defendant on or about July 27, 2018, but to date, Plaintiff has not received a response.

*See* July 27, 2018 Correspondence from Plaintiff to Defendant containing damage summary (without attachments) attached hereto as **"Exhibit B."**

29.     Under Florida law, upon the finding of a verified sinkhole loss, insurance companies are also obligated to pay damages for above-ground damages in addition to remediating the sinkhole activity below-ground. The above-ground (i.e. cosmetic damage) estimates also have to account for the potential destruction that may occur during sinkhole remediation, for example, in the event there are interior grout points, damage to interior slabs, tile and other types of floor covering may need replaced.

30.     As such, the Plaintiff commissioned an estimator to perform a cosmetic damage estimate which totaled $18,851.191.02.

31.     These estimates along with a damages summary were provided to Defendant on or about August 17, 2018. *See* Cosmetic Damages Summary attached hereto as **"Exhibit C."**

32.     As with the reports and estimates for below-ground repairs, Plaintiff has not received a response from Defendant regarding its cosmetic estimates, either.

33.     To date, Defendant has failed to pay Plaintiff for the requisite benefits due under the policy thereby acting in breach of the insurance contract.

34.     As a direct and proximate result of the Defendant's breach of contract, Plaintiff has suffered damages as recoverable under the policy in the form of the value of costs to stabilize the land and building and repair the foundation in the amount of $6,628,125.00, costs associated with above-ground repairs in the amount of $18,851.191.02, costs associated with debris removal, costs of preservation of property including landscaping restoration, any consequential damages plus the application interest rate, and all other elements of damages provided for in the policy of insurance.

35.     Plaintiff performed all conditions precedent to this action or those conditions were waived or excused.

36. Because of the Defendant's refusal and failure to pay any part of the loss to Plaintiff and/or loss payees/third-party beneficiaries, Plaintiff was compelled to retain the services of insurance professionals including a public adjuster and the undersigned to assist them in the adjustment of the loss and prosecution of this action. As such, Plaintiff is obligated to counsel for payment of reasonable attorney's fees and Defendant is liable to pay such fees pursuant to Florida Statute §627.428.

**WHEREFORE**, Plaintiff, Autumnwood Grove Condominium Association, Inc., respectfully requests this Court enter judgment against Defendant, Pennsylvania Insurance Company for: (a) all damages to which Plaintiff is entitled, including all benefits under the Policy, compensatory and consequential damages; (b) pre-judgment interest; (c) court costs, expert fees, and attorneys' fees pursuant to Florida Statute §627.428; and (d) any such other and further relief that this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rule of Civil Procedure, Plaintiff also hereby demands trial by jury on all issues so triable against Defendant, Pennsylvania.

Respectfully submitted this 13th day of September 2018.

/s/ Erin Dunnavant
Erin E. Dunnavant, Esq., FBN: 89328
Larry E. Bache, Jr., Esq., FBN: 91304
Javier Delgado, Esq., FBN: 560146
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd., Suite 950
Tampa, Florida 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692
E-mail: lbache@merlinlawgroup.com
E-mail: edunnavant@merlinlawgroup.com
E-mail: jdelgado@merlinlawgroup.com
E-mail: uthomas@merlinlawgroup.com
*Attorneys for Plaintiff*